UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIPPE MAGLOIRE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COMPASS, INC., ROBERT REFFKIN, SCOTT WAHLERS, ALLAN LEINWAND, FRANK MARTELL, JOSH MCCARTER, CHARLES PHILLIPS, STEVEN SORDELLO, PAMELA THOMAS-GRAHAM, DAWANNA WILLIAMS, and RYAN M. SCHNEIDER,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Philippe Magloire ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Compass, Inc. ("Compass" or the "Company") and Anywhere Real Estate Inc. ("Anywhere"), as well as press releases, analyst reports, and other media concerning the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**SUMMARY OF THE ACTION**

1. Plaintiff asserts non-fraud, strict liability claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") on behalf of former Anywhere shareholders who acquired Compass common stock in direct exchange for Anywhere securities pursuant to the S-4 registration statement, 424B3 prospectus, and related oral communications (collectively, with materials incorporated therein, the "Registration Statement" or "Offering Materials"), issued in connection with the January 2026 stock-for-stock exchange by which Compass acquired and merged with Anywhere (the "Merger" or "Merger Exchange"). Named as Defendants are Compass and current and former officers and directors of Compass and Anywhere.

2. Defendant Compass is a real estate services company based in New York, New York. At all relevant times, the Company's stock has traded on the New York Stock Exchange ("NYSE") under the ticker symbol "COMP." In January 2026, Compass acquired Anywhere in the Merger, issuing approximately 162.1 million newly issued shares of stock to Plaintiff and other Anywhere shareholders, whom Defendants solicited, pursuant to the Offering Materials.

3. Ahead of the Merger, Anywhere was a residential real estate services company headquartered in Madison, New Jersey, whose common stock was listed on NYSE under the ticker

symbol "HOUS." Anywhere owned brands Better Homes and Gardens Real Estate, CENTURY 21, Coldwell Banker, Coldwell Banker Commercial, Corcoran, ERA, and Sotheby's International Realty with approximately 173,500 independent sales agents in the United States.

4. The Offering Materials that Defendants issued for the Merger were materially false and misleading because they omitted material facts required to be disclosed under governing SEC regulations and necessary to make the statements made not misleading.

5. First, the Offering Materials falsely attested that Defendants were making (and would continue to make) "reasonable best efforts to obtain [] authorizations and consents" "from certain regulatory authorities" and "to take, or cause to be taken, all appropriate actions and [. . .] all things necessary, proper or advisable under applicable law (including any antitrust laws) to consummate and make effective the merger at the earliest practicable date."

6. At the same time, the Offering Materials misrepresented and omitted material facts concerning Compass's "compliance with applicable laws, the absence of governmental investigations and the possession of and compliance with licenses and permits necessary for the conduct of business[.]"

7. These and related representations and omissions were inaccurate and incomplete, and therefore materially misleading, because, in truth, Defendants secretly hired Mike Davis—a lobbyist, lawyer, and ally of President Donald Trump—to obtain potentially illicit access to high-level Trump Administration Department of Justice ("DOJ") officials to circumvent the standard merger review process. Unbeknownst to Plaintiff and other Anywhere shareholders who received Compass stock in the Merger, these surreptitious backchannel efforts contradicted and undermined Defendants' attestations of "reasonable best efforts" to obtain regulatory approval and purported "compliance with applicable laws."

8. In the months leading up to the Merger, United States Senators Elizabeth Warren and Ron Wyden wrote to the United States DOJ and Federal Trade Commission ("FTC"), asking that they "closely scrutinize" the proposed Merger. Focusing on the combined entity's projected concentration in local markets, they made clear that "[t]he antitrust implications of this merger are significant: it could raise barriers to entry for smaller firms, and threaten the transparency of real estate listings by allowing a dominant brokerage to dictate how listings are shared and with whom."

9. Instead of addressing these concerns legitimately—through ordinary, above-board regulatory channels in compliance with the letter and spirit of long-standing legal, regulatory, and industry standards—Defendants hired Trump-aligned lawyer Mike Davis deliberately to skirt DOJ antitrust scrutiny and push the Merger through, notwithstanding the threat of adverse consequences including potential Congressional scrutiny, regulatory enforcement action, and reputational harm.

10. In addition to rendering affirmative statements in the Offering Materials materially misleading, the failure of Defendants to disclose these facts violated affirmative disclosure duties. First, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), required disclosure of any known events or uncertainties that had caused or were reasonably likely to adversely affect Compass's financial condition and operations or render its reported financial results not indicative of its future operating results. Defendants' political interference and efforts to bypass regulatory approval channels and compliance with applicable laws were known events and uncertainties at the time of the Merger that required disclosure under Item 303.

11. Second, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factor" section of the Offering Materials, (a) a discussion of the most significant factors that made the offering of COMP stock in the Merger risky or speculative and (b) an adequate description of each risk factor, with sufficient specificity to provide meaningful

information regarding each risk in the unique context of the Company's business and operations. The Offering Materials' discussion of risk factors, however, did not mention the likely risks and negative impact of Defendants' hiring of a President Trump-allied lawyer to backchannel senior DOJ officials and sidestep a second request for information ("Second Request") under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"), including the resulting substantial likelihood of potential enforcement action in the future.

12. Third, Defendants' failure to disclose the nature and extent of Defendants' efforts to block antitrust regulators from conducting a deeper investigation into the Merger, much less the anticipated impact, rendered false and misleading the Offering Materials' numerous references to known risks that, "if" they occurred, "may" or "could" affect the Company. These "risks" were, in truth, already beginning to materialize, but were not disclosed in the Offering Materials.

13. With these material misrepresentations and omissions in the Offering Materials, Defendants were able to complete the Merger and thereby successfully solicited and sold millions of new shares of COMP stock to Plaintiff and other Anywhere shareholders. After the Merger, information emerged confirming that the Offering Materials misrepresented and omitted material information. As the truth gradually emerged, the price of Compass shares declined sharply.

14. For example, on January 9, 2026, the *Wall Street Journal* reported that "[t]he head of the Justice Department's antitrust division, Gail Slater, wanted to launch an extended review of the merger to weigh whether it was anticompetitive," but Compass avoided the Second Request by hiring "Trump-aligned lawyer Mike Davis" and "appeal[ing] above [Slater], to the office of Deputy Attorney General Todd Blanche[.]" Even so, the DOJ made clear that an enforcement action was still on the table "if anticompetitive effects are found[.]"

15. Then, on February 19, 2026, U.S. Senators Elizabeth Warren and Bernard Sanders, as well as sixteen other members of Congress, sent a letter (the "Warren Letter") to then-Attorney General Pamela Bondi ("AG Bondi"), requesting information regarding the DOJ's review of the Merger and criticizing the "deeply disturbing" "fact pattern reported in the Compass-Anywhere deal" regarding paid-for "access to high-level Trump Administration DOJ officials[.]"

16. Most recently, in June 2026, the New York State Attorney General confirmed the existence of an antitrust investigation into Compass regarding the Merger.

17. At the commencement of this action, COMP stock closed at $9.19 per share—a ***decline of over 28%*** from the approximately $12.84 share price on the exchange date for the Merger. Plaintiff and other former Anywhere shareholders have suffered substantial losses as a result of Defendants' violations of the Securities Act in connection with the Merger.

**JURISDICTION AND VENUE**

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 15 U.S.C. §77v, given that this action arises under Sections 11, 12(a)(2), and 15 of the Securities Act.

19. Venue properly lies in this District pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §1391 because a substantial part of the events and/or statements and omissions giving rise to the claims herein occurred, in part, within this District, Compass is headquartered in this District, and Defendants transact business and they and/or their agents may be found in this District.

20. This Court has personal jurisdiction over each Defendant. Compass is headquartered in this District, and each Defendant or their agents drafted the Offering Materials in part in this District and solicited and sold the subject securities and Offering Materials to Plaintiff and other Anywhere investors in this District, and those contacts have a substantial connection to the claims alleged herein, which arose in whole or in part in this District.

21. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange—here, the NYSE.

**PARTIES**

22. Plaintiff is a United States citizen and resident of Hawaii who directly acquired newly issued Compass shares in the Merger in exchange for Anywhere securities pursuant to the Registration Statement and was damaged thereby.

23. Defendant Compass is a New York based real estate services company that includes the largest residential real estate brokerage in the United States by sales volume. Compass offers services to both seller and buyer clients in 38 states and Washington D.C., with approximately 37,700 real estate agents. The Compass network includes Christie's International Real Estate brand, with over 100 independently owned brokerages in over 50 countries and territories. Compass and the other Defendants planned, negotiated, and controlled the Merger.

24. Defendant Robert Reffkin ("Reffkin") was, at all relevant times, Founder, Chief Executive Officer, and Chairman of Compass. He reviewed, contributed to, and signed the Registration Statement.

25. Defendant Scott Wahlers was, at all relevant times, Chief Financial Officer of Compass. He reviewed, contributed to, and signed the Registration Statement.

26. Defendant Allan Leinwand was, at all relevant times, a member of the Compass Board of Directors. He reviewed, contributed to, and signed the Registration Statement.

27. Defendant Frank Martell was, at all relevant times, a member of the Compass Board of Directors. He reviewed, contributed to, and signed the Registration Statement.

28. Defendant Josh McCarter was, at all relevant times, a member of the Compass Board of Directors. He reviewed, contributed to, and signed the Registration Statement.

29. Defendant Charles Phillips was, at all relevant times, a member of the Compass Board of Directors. He reviewed, contributed to, and signed the Registration Statement.

30. Defendant Steven Sordello was, at all relevant times, a member of the Compass Board of Directors. He reviewed, contributed to, and signed the Registration Statement.

31. Defendant Pamela Thomas-Graham was, at all relevant times, a member of the Compass Board of Directors. She reviewed, contributed to, and signed the Registration Statement.

32. Defendant Dawanna Williams was, at all relevant times, a member of the Compass Board of Directors. She reviewed, contributed to, and signed the Registration Statement.

33. Defendant Ryan M. Schneider was, at all relevant times, Chief Executive Officer, President, and a Director of Anywhere. He co-signed the shareholder letter in the Offering Materials, which constitutes signing the Registration Statement under Section 11, and also reviewed and contributed to the Registration Statement, took part in the Merger negotiations, and solicited Anywhere shareholders to participate in the Merger and exchange their Anywhere stock for Compass stock.

34. The individuals named as Defendants herein are referred to collectively as the "Individual Defendants." Compass and the Individual Defendants are collectively referred to as the "Defendants." The Individual Defendants each signed or are deemed to have signed or were named as a current or incoming director (or person performing similar functions) in the Registration Statement, directly solicited current and former Anywhere shareholders to purchase the new Compass shares issued pursuant thereto in connection with the Merger, planned and contributed to the Merger and the Offering Materials and related oral communications, and

attended promotional events to meet with and present favorable information to Anywhere and Compass investors, all motivated by their own and the Company's financial interests.

## THE ANNOUNCEMENT OF THE MERGER

35. On September 22, 2025, Compass announced it had agreed to acquire Anywhere in an all-stock transaction worth $4.2 billion in total consideration. In the accompanying press release, the Company broadcasted that the proposed Merger "will bring together approximately 340,000 real estate professionals globally onto a shared network operating in every major U.S. city[.]" The press release specified that the transaction was "expected to close in the second half of 2026, subject to [. . .] receipt of regulatory approvals."

36. Compass also released a presentation to investors representing that the Merger would "establish[] an expanded U.S. presence, covering all 50 states," "[s]ignificantly increase[] existing franchise network," and "unlock[] agent-to-agent client referral opportunities in key US markets and international territories[.]"

37. Following the Merger announcement, on November 4, 2025, Compass held its third quarter earnings call, a transcript of which Compass filed with the SEC. During this call, Defendant Reffkin underscored the Company's "confiden[ce] in our ability to get the deal approved as we firmly believe that this is a pro-competitive deal that will bring more choice and better products to home sellers, to homebuyers, to real estate professionals, and to franchise owners."

38. Despite these assurances, Compass's plan to evade DOJ review was revealed only after the effective date of the Registration Statement and upon or after the close of the Merger.

## THE OFFERING MATERIALS FOR THE MERGER CONTAINED MATERIAL MISREPRESENTATIONS AND OMISSIONS

39. On November 14, 2025, Defendants filed with the SEC a registration statement on Form S-4, used to register the new Compass shares to be issued and exchanged in the Merger. The SEC declared the Registration Statement effective on December 2, 2025.

40. Also on December 2, 2025, Defendants filed a prospectus on Form 424B3 for the Compass shares ultimately issued and exchanged in the Merger, which prospectus forms part of the Registration Statement or Offering Materials as referred to herein.

41. On January 7, 2026, Compass filed a current report with the SEC on Form 8-K. In that report, Compass announced that "[t]he HSR Act waiting period expired on January 2, 2026[.]"

42. Two days later, on January 9, 2026, Defendants completed the Merger, issuing approximately 162.1 million new shares of Compass stock directly to shareholders of Anywhere. Each of these new shares of Compass common stock was issued, solicited, and sold directly to Anywhere shareholders pursuant to the Offering Materials in the uniform Merger Exchange at a uniform market price.

43. Defendants effected the Merger pursuant to the Offering Materials, which contained untrue and incomplete statements of material fact and omitted material facts both required by governing regulations and necessary to make the statements made not misleading.

44. Among other things, the Offering Materials falsely touted that both Compass and Anywhere would "use their respective reasonable best efforts to obtain [] authorizations and consents" "from certain regulatory authorities" and "to take, or cause to be taken, all appropriate actions and [. . .] all things necessary, proper or advisable under applicable law (including any antitrust laws) to consummate and make effective the merger at the earliest practicable date."

45. Specifically, the Offering Materials promised that "Compass will ***use reasonable best efforts*** to take actions necessary to ensure the expiration or termination of the waiting period under the HSR Act[.]" These reasonable best efforts were listed in the Offering Materials as:

> (i) ***selling, divesting, franchising or otherwise disposing of the assets***, categories of assets, operations, investments, companies, brands or businesses of either the Compass or its subsidiaries, or Anywhere or its subsidiaries, and, franchising or licensing any brand of either the Compass or its subsidiaries, or Anywhere or its subsidiaries; (ii) ***holding separate*** and agreeing to sell, franchise or otherwise dispose of, the assets, categories of assets, operations, investments, companies, brands or businesses of either the Compass or its subsidiaries, or Anywhere or its subsidiaries, and, holding separate and agreeing to franchise or license any brand of either the Compass or its subsidiaries, or Anywhere or its subsidiaries (collectively, the "divestiture actions"); and (iii) ***agreeing to a behavioral remedy***, or any conditions or limitations on the freedom to operate, with respect to any of the businesses, operations, assets or liabilities of the Compass or its subsidiaries, or Anywhere or its subsidiaries (together, the "behavioral remedies").

46. The Offering Materials further assured that "Compass will consult with Anywhere in good faith in connection with obtaining the expiration or termination of any applicable waiting period under the HSR Act . . . provided that":

> ***Compass will have the right to direct, devise, implement and control*** (i) the strategy, decisions, and ***communications with governmental entities*** for obtaining expiration or termination of any applicable waiting periods under the HSR Act [. . .] with respect to the transactions contemplated by the merger agreement, (ii) ***responses to any requests of, inquiry from, or investigation by, an antitrust authority*** (including directing the timing, nature and substance of all such responses) with respect to the transactions contemplated by the merger agreement, and (iii) any divestiture actions or behavioral remedies required by the merger agreement.

47. Additionally, the Offering Materials assured that "in no event will either Compass or Anywhere or any of their respective affiliates be required to pay any consideration to any third parties or give anything of value to obtain any such person's authorization, approval, consent or waiver to effectuate the merger and the other transactions contemplated by the merger agreement, other than filing, recordation or similar fees."

48. In discussing the expected timing of the Merger, the Offering Materials maintained that "[t]he parties expect the merger to be completed during the second half of 2026, ***subject to*** satisfaction of customary closing conditions, including ***receipt of regulatory approvals***."

49. Contrary to these statements, the Merger closed on January 9, 2026—just days after the HSR Act waiting period expired and nearly six months ahead of the "second half of 2026" timeline Defendants repeatedly represented to investors. This accelerated timeline was the product of the undisclosed effort to bypass the Antitrust Division's ordinary review, including the extended investigation that the head of the Antitrust Division sought to undertake, rather than the ordinary-course regulatory process described in the Offering Materials.

50. The Offering Materials also represented that Compass was in "compliance with applicable laws," as well as "the absence of governmental investigations and the possession of and compliance with licenses and permits necessary for the conduct of business[.]" The Merger Agreement formed part of the Offering Materials, and reinforced this representation to Anywhere shareholders. Defendants attached the Merger Agreement to the Registration Statement as Annex A, stating it "is incorporated by reference into this joint proxy statement/prospectus." The Offering Materials also confirmed that "Compass has supplied all information contained or incorporated by reference" therein "relating to Compass and Merger Sub," attesting to their "compliance with applicable laws, the absence of governmental investigations and the possession of and compliance with licenses and permits necessary for the conduct of business" and "the absence of certain legal proceedings."

51. Specifically, in describing the conduct of Compass's business before closing of the Merger, the Offering Materials indicated that Compass committed to "conduct its business in the

ordinary course of business consistent with past practice" and "comply in all material respects with applicable laws . . . ." Additionally, the Offering Materials recited Compass's commitment to:

> use reasonable best efforts to take, or cause to be taken, all appropriate actions and to do, or cause to be done, all things necessary, proper or advisable under applicable law (including under any antitrust laws) to consummate and make effective the merger and the other transactions contemplated by the merger agreement at the earliest practicable date, including (i) pursuing a prompt expiration or termination of any applicable waiting period under the HSR Act, (ii) responding to and supplying as promptly as practicable any information and documentary material that may be requested by a governmental entity (including pursuant to a second request for information under the HSR Act) and (iii) resolving any objection asserted with respect to the transactions contemplated under the merger agreement under any antitrust laws raised by any governmental entity charged with enforcing, applying, administering, or investigating the HSR Act or any other antitrust laws.

52. These statements concerning Defendants' "use of reasonable best efforts" to obtain the expiration or termination of any applicable waiting period under the HSR Act and "compliance with applicable laws" misrepresented material facts, were materially incomplete, and omitted to state material facts. In truth, as was later gradually revealed, and as is currently the subject of a Congressional inquiry and the New York Attorney General's antitrust investigation, Defendants hired a well-connected lobbyist and lawyer connected with President Trump to obtain access to high-level Trump Administration DOJ officials to circumvent the antitrust merger review process. In other words, Compass was not responding to the Antitrust Division through ordinary channels, but was working to force through the Merger and prevent a Second Request from issuing at all.

53. For at least three independent reasons, Defendants were required to disclose their plan to hire a third party in order to obtain access to high-level DOJ officials outside normal merger review channels. First, Item 303 required disclosure of any known events or uncertainties that had caused or were reasonably likely to cause Compass's disclosed financial information not to be indicative of future operating results and that otherwise might adversely affect Compass's financial condition and operations materially. Defendants' efforts to bypass regulatory approval, coupled

with their noncompliance with applicable laws and undisclosed events and uncertainties, as well as their likely consequences, were all known at the time of the Merger and thus required disclosure.

54. Second, Item 105 required, in the "Risk Factor" section of the Offering Materials, (a) a discussion of the most significant factors that made the offering risky or speculative and (b) an adequate description of each risk factor. The Offering Materials' discussion of risk factors did not mention, much less accurately disclose, the likely risks and anticipated negative impact from Defendants' hiring of a President Trump-allied lawyer to short-circuit the regulatory review process and appeal directly to senior DOJ officials to sidestep the Second Request under the HSR Act, including the likelihood of potential enforcement action in the future.

55. Third, Defendants' failure to disclose the nature and extent of Defendants' efforts to block antitrust regulators from conducting a deeper investigation into the Merger rendered false and misleading the Offering Materials' references to known risks that, "if" they occurred, "may" or "could" affect the Company. These "risks" were, in truth, already beginning to materialize at the time of the Merger, requiring disclosure in the Offering Materials.

56. With these and related material misrepresentations and omissions in the Offering Materials and related oral communications, Defendants were able to complete the Merger, issuing approximately 162 million new shares of COMP directly to Plaintiff and other Anywhere shareholders pursuant to the Offering Materials.

**DEFENDANTS' MISSTATEMENTS AND OMISSIONS WERE MATERIAL**

57. After the Merger, the price of Compass shares suffered sharp declines as the existence and consequences of Defendants' plan to evade further DOJ merger review, and thus the material misrepresentations and omissions, gradually emerged in a series of partial disclosures.

58. For example, on January 9, 2026, the *Wall Street Journal* published an article reporting that "[t]he head of the Justice Department's antitrust division, Gail Slater, wanted to

launch an extended review of the merger to weigh whether it was anticompetitive[.]" However, according to the *Wall Street Journal* report, Compass avoided the Second Request from the DOJ by hiring "Trump-aligned lawyer Mike Davis" and "appeal[ing] above [Slater], to the office of Deputy Attorney General Todd Blanche," stating in part:

> The head of the Justice Department's antitrust division, Gail Slater, wanted to launch an extended review of the merger to weigh whether it was anticompetitive […]. Compass and its lawyers appealed above her, to the office of Deputy Attorney General Todd Blanche, arguing that any worries could be addressed without an investigation. Blanche's office agreed […]
>
> Compass had brought on Trump-aligned lawyer Mike Davis, known for his efforts to get conservative judges seated on the federal bench, to help make their pitch. Davis has become a sought-after adviser to companies with deals facing government review. He helped Compass make its case to Blanche's office.

59. The same *Wall Street Journal* article reported that "[u]nder government guidelines passed in 2023, mergers that give a company control over more than 30% of a market are presumed to be illegal. In some metro areas, including Chicago, New York and San Francisco, the combined company's market share would exceed 30%[.]" A spokesperson for the DOJ reportedly made clear that "nothing precludes the department from taking an enforcement action in the future if anticompetitive effects are found[.]"

60. The next month, on February 19, 2026, Senators Elizabeth Warren and Bernard Sanders, as well as sixteen other members of Congress, sent the Warren Letter to then-Attorney General Bondi which, among other things, requested information regarding the DOJ's review of the Merger and criticized the "deeply disturbing" "fact pattern reported in the Compass-Anywhere deal[...], indicating that it may be another example of well-connected industries and lobbyists obtaining inside access to high-level Trump Administration DOJ officials, and using this access to pervert the antitrust process to obtain approval of anticompetitive mergers that will reduce competition and harm the public."

61. The Warren Letter called attention to Compass's reported hiring of Mike Davis, "a Trump-aligned lawyer," to "help gain approval of the Compass-Anywhere merger," stating in part:

> This approval from Mr. Blanche came after Compass reportedly hired Mike Davis, a Trump-aligned lawyer who has been involved in other merger review controversies, to help gain approval of the Compass-Anywhere merger, and reporting suggests that Davis "helped Compass make its case to Blanche's office," contributing to the accelerated clearance timeline. Assistant Attorney General Slater was subsequently forced out of the Justice Department. Separate reporting indicates that Davis boasted, "I recommended her hiring. And her firing[,]" and declared "good riddance" minutes after her departure became public.

(Internal footnotes omitted).

62. The Warren Letter asked the DOJ to provide written responses to seventeen questions to understand the process that resulted in the DOJ "rubber stamping the merger of two of the largest brokerages in the nation[.]" The letter specifically asked then-Attorney General Bondi to "describe any communications regarding the Compass-Anywhere merger that ***took place outside of normal Antitrust Division merger review channels***, including informal meetings, calls, or emails not shared with Antitrust Division personnel."

63. According to the Warren Letter, the DOJ's review of the proposed Merger "raise[d] serious questions about whether […] the Department's merger review process has been ***corrupted***, whether antitrust experts were afforded appropriate independence, whether ***well-resourced parties had an uneven ability to obtain high-level access outside normal channels***, and whether parties ***agreed to anything in return***."

64. On February 20, 2026, Seeking Alpha published an article titled "Compass stock slips after Sen. Warren questions DOJ review of Anywhere deal." Seeking Alpha reported that "Compass (COMP) stock fell 3.2% in Friday midday trading following a report that Senator Elizabeth Warren (D-MA) questioned the Justice Department about its review of Compass's Anywhere Real Estate acquisition."

65. On this news, the price of COMP shares fell another 12.94%, trading down to $9.08 per share on February 23, 2026.

66. On June 3, 2026, Seeking Alpha published another article titled "Compass stock plunges after report on antitrust probe by New York Attorney General office." The Seeking Alpha article reported that "Compass (COMP) stock plunged after a media report that said the New York Attorney General's office is investigating the real estate services provider over antitrust concerns." Further, Seeking Alpha reported that "[t]he department's agents have approached leaders at some of New York City's top brokerages for information as part of an inquiry into the residential giant[.]"

67. On June 4, 2026, according to a Law360 article, the New York Attorney General's Office confirmed the existence of an antitrust investigation into Compass concerning the Merger. Based on this news, Compass shares fell another 3.8%.

68. At the commencement of this action, Compass shares closed at $9.19 per share—a decline of over 28% from the approximately $12.84 share price on the exchange date for the Merger. Plaintiff and other former Anywhere shareholders have thus suffered severe losses as a result of Defendants' Securities Act violations.

## CLASS ACTION ALLEGATIONS

69. Plaintiff brings this case as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all former shareholders of Anywhere stock who exchanged their shares of Anywhere stock for Compass common stock in the Merger Exchange (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, any entity in which Defendants have or had a controlling interest, and any Judge assigned to this case and their family members and staff.

70. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are likely thousands of members in the proposed Class. Defendants solicited and sold over 160 million shares in the Merger Exchange. Members of the Class may be identified from records maintained by Compass or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

71. Plaintiff's claims are typical of the claims of the Class members, all of whom are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws.

72. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in class and securities litigation.

73. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the Securities Act;

(b) whether the Offering Materials were negligently prepared and contained inaccurate statements and omissions of material fact required to be stated therein; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

74. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all members is impracticable, and the damages suffered by individual Class members are relatively small as compared with Defendants' combined resources. Class treatment will permit a large number of similarly situated persons to prosecute

their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

**COUNT I**

**Violation of §11 of the Securities Act**
**Against All Defendants**

75. Plaintiff incorporates the above allegations as if set forth fully herein.

76. This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

77. As of the effective date, the Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

78. Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Materials. This claim avers and sounds in strict liability and expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as it is solely based on strict liability and/or negligence under the Securities Act. This claim does not sound in fraud and Plaintiff expressly disavows and disclaims any allegation that Defendants acted with scienter or fraudulent intent, which, along with reliance, are not elements of a claim under §11 of the Securities Act.

79. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

80. By reason of the conduct herein alleged, each Defendant is liable to Plaintiff and Class members for having violated, or controlled an employee who violated, §11 of the Securities Act, and is therefore liable under *respondeat superior* or principles of agency.

81. Plaintiff acquired COMP shares in exchange for Anywhere shares directly in the Merger Exchange pursuant to the Offering Materials and without knowledge of the untruths and omissions contained therein.

82. Plaintiff and the Class have sustained damages. The value of COMP common stock has declined substantially subsequent to and due to Defendants' violations.

83. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this claim is based to the time that Plaintiff commenced this action. Less than three years have elapsed between the time that the securities upon which this claim is brought were offered to the public and the time that Plaintiff commenced this action.

84. By virtue of the foregoing, Plaintiff and Class members are entitled to damages under §11, as measured by the provisions of §11(e), as well as any and all remedies that may exist in equity or at law.

**COUNT II**

**Violation of §12(a)(2) of the Securities Act**
**Against All Defendants**

85. Plaintiff incorporates the above allegations as if set forth fully herein.

86. This claim is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against each of the Defendants.

87. This claim avers and sounds in strict liability and expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as this claim is solely based on claims of strict liability and/or negligence under the Securities Act. This claim does not sound in fraud and Plaintiff expressly disavows and disclaims any allegation that Defendants acted with scienter or fraudulent intent, which, along with reliance, are not elements of a claim under §12(a)(2) of the Securities Act.

88. By means of the prospectus and related oral communications, Defendants promoted, solicited, and sold Compass shares to Plaintiff and Class members. Defendants were sellers to and direct solicitors of purchasers of the Company's securities offered pursuant to the Merger. Defendants issued, caused to be issued, or signed or authorized the signing of the Offering Materials and related oral communications in connection with the Merger, which they used to induce investors, including Plaintiff and the other Class members, to acquire the Compass shares solicited and sold by means of the Merger Exchange.

89. As of the Merger close, and at all relevant times, the prospectus and related oral communications contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above. Defendants' acts of solicitation included directly soliciting Plaintiff and other current and former Anywhere shareholders, and participating in the preparation, dissemination, and promotion of the false and misleading prospectus and related oral communications directly to Plaintiff and putative Class members.

90. Defendants had a duty to make a reasonable and diligent investigation of the statements contained in the prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Offering Materials as set forth above.

91. Plaintiff did not know, nor, in the exercise of reasonable diligence, could have known, of the material untruths and omissions contained in the prospectus and related oral communications at the time Plaintiff acquired Compass shares in the Merger Exchange.

92. By reason of the conduct alleged herein, Defendants and/or their employees, agents, or other representatives, violated §12(a)(2) of the Securities Act. As a direct and proximate result

of such violations, Plaintiff and Class members who acquired Compass shares in the Merger Exchange pursuant to the prospectus sustained damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the Compass common stock issued pursuant to the prospectus have the right to rescind and recover the consideration paid for their shares, and hereby tender their Compass common stock to Defendants. Class members who sold their Compass common stock seek damages to the extent permitted by law. Plaintiff and other putative Class members are also entitled to an accounting and disgorgement of Defendants' unjust profits, and additional remedies to the extent permitted in equity or at law.

93. This claim is brought within one year after the discovery of the untrue and misleading statements and omissions at issue and within three years of the date of sale to Plaintiff and Class members.

**COUNT III**

**Violation of §15 of the Securities Act**
**Against All Defendants**

94. Plaintiff incorporates the above allegations as if set forth fully herein.

95. This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, against all Defendants.

96. This claim avers and sounds in strict liability and expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as this claim is solely based on claims of strict liability and/or negligence under the Securities Act. This claim does not sound in fraud and Plaintiff expressly disavows and disclaims any allegation that Defendants acted with scienter or fraudulent intent, which, along with reliance, are not elements of a claim under §15 of the Securities Act.

97. The Individual Defendants were controlling persons of Compass and/or Anywhere by virtue of their positions as directors or senior officers of Compass and/or Anywhere. The Individual Defendants each had a series of direct or indirect business or personal relationships with other directors or officers or major shareholders of Compass and Anywhere. The Company controlled the Individual Defendants and all Compass employees. Compass orchestrated and negotiated the Merger.

98. To the extent necessary to plead this claim, Compass and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act alleged in the claims alleged above. As alleged, these Defendants signed or are deemed to have signed or authorized the signing of the Registration Statement, were named as directors in, or designated employees or representatives or agents to sign or be named as incoming directors in, the Registration Statement, and otherwise participated in the process which allowed the Merger to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Certifying this action as a class action, appointing Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel;

B. Awarding damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including reasonable counsel fees and expert fees; and

D. Awarding rescission, disgorgement, or such other equitable or injunctive relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff demands trial by jury.

DATED: October 7, 2026

Respectfully Submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO

*/s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
jrussello@rgrdlaw.com

GIRARD SHARP LLP
ADAM E. POLK
(*pro hac vice* forthcoming)
RENEE L. APPLEGATE
(*pro hac vice* forthcoming)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: 415/981-4800
415/981-4846 (fax)
apolk@girardsharp.com
rapplegate@girardsharp.com

THE HALL FIRM, LTD.
DAVID W. HALL
(*pro hac vice* forthcoming)
One Embarcadero Center, Suite 1200
San Francisco, CA 94104
Telephone: 415/426-5648
415/402-0058 (fax)
dhall@hallfirmltd.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

Philippe Magloire ("Plaintiff") declares:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) in the securities that are the subject of this action: *See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 10/7/2026.

DocuSigned by:
Philippe Magloire
FE92E77D2DD7407...
Philippe Magloire

# SCHEDULE A

## SECURITIES TRANSACTION

**Compass, Inc.**

| DATE | SYMBOL | TRANSACTION TYPE | SHARES | PRICE |
|---|---|---|---|---|
| 2026-01-09 | HOUS to COMP | PURCHASE / MERGER EXCHANGE | 143 | * |

* Pursuant to the merger, each share of Anywhere common stock was exchanged for 1.436 shares of Compass common stock.